IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SHELTER MUTUAL INSURANCE )
COMPANY, )
 )
       Plaintiff, )
 )
vs. ) No. CIV-17-1237-C
 )
DANIEL PHILLIPS AND )
APRIL MARTIN, as custodial )
parent of S.M. and A.M., )
minors, )
 )
       Defendants. )

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Motion for Summary Judgment (Dkt. No. 18). Defendant April Martin filed an Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. No. 24). Defendant Phillips filed an Objection and Response to Plaintiff Shelter Insurance's Motion for Summary Judgment (Dkt. No. 25). Plaintiff filed a Combined Reply to Defendant Martin's and Defendant Phillips' Responses to Plaintiff's Motion for Summary Judgment (Dkt. No. 26). The Motion is now at issue.

I. Background

April Martin filed a state court action against Daniel Phillips for alleged sexual misconduct and molestation. Martin accused Phillips of engaging in "the sexual molestation and abuse of [S.M. and A.M.] on multiple occasions between March of 2010 and September of 2010." (Pl.'s Mot., Dkt. No. 18, Ex. 2.) Phillips pled guilty in Oklahoma County District Court to multiple counts of lewd acts with children in violation of 21 Okla.

Stat. § 1123. (Pl.'s Mot., Dkt. No. 18, Ex. 4.) Shelter Mutual Insurance Company ("Shelter") issued multiple Dwelling Insurance Policies[1] to Daniel Phillips and these policies insured multiple rental properties that Daniel Phillips owned. (Pl.'s Mot., Dkt. No. 18, p. 1.) The offending conduct occurred in these rental properties. (Pl.'s Mot., Dkt. No. 18, p. 2.) In her state court Petition, Martin labels her causes of action: Assault and Battery, Negligence, and Intentional Infliction of Emotional Distress. (Pl.'s Mot., Dkt. No. 18, Ex. 2.)

In the underlying action, Shelter is defending Phillips under a reservation of rights.[2] Shelter Mutual Insurance Company instituted this action in federal court and seeks a declaratory judgment that Defendant Phillips' alleged conduct in molesting S.M. and A.M. was intentional and excluded under the Landlords Liability Coverage provision of their policy and Shelter has no obligation to defend Phillips in either the underlying action or in the event of a judgment against him in the underlying action. (Pl.'s Mot., Dkt. No. 18, p. 9.)

---

[1] Policy Nos. 35-73-3628133-1, 35-73-3628133-3, and 35-73-3628133-4. (Pl.'s Comp., Dkt. No. 1, p.1).

[2] The reservation of rights is explained as follows:
> The fact that an insurer's duty to defend arises at the outset of litigation while its duty to indemnify is determined at the conclusion of the litigation means that an insurer may have to defend an action in which there will be no duty to indemnify the insured. In such cases, insurers typically defend insureds under a reservation of rights. . . . [and] the insurer reserves the right to deny coverage notwithstanding its initial decision to defend the insured.

Douglas R. Richmond, Reconsidering the Rejection of Reservations of Rights 34 No. 1 Ins. Litig. Rep. 5 Feb. 3, 2012 (footnotes omitted).

## II. Standard

### A. Declaratory Judgment Act

The Declaratory Judgment Act is a procedural tool and does not create substantive rights for parties. See Farmers Alliance Mut. Ins. Co. v. Jones, 570 F.2d 1384, 1386 (10th Cir. 1978). "When faced with a motion for declaratory judgment, courts therefore often construe the motion as a motion for summary judgment on a declaratory judgment action." Miller v. Cincinnati Ins. Co., Civ. No. 17-00271 SCY/JHR, 2018 WL 1633460 (D.N.M. April 2, 2018). "The party seeking a declaratory judgment pursuant to § 2201(a) must overcome two hurdles. First, the plaintiff must demonstrate the existence of an 'actual controversy. . . .' Second, 'even where a constitutionally cognizable controversy exists['], a plaintiff 'must convince the court to exercise its jurisdiction' under the DJA based on 'a number of case-specific factors.'" Fair Am. Ins. and Reinsurance Co. v. Stewart, 274 F.Supp.3d 1238, 1244 (N.D. Okla. 2017) (citations omitted). The next and final question "'involves a discretionary assessment of disparate, often incommensurate, and case-specific concerns.'" Id. at 1244-45.

### B. Summary Judgment

A key policy goal and primary principle of Fed. R. Civ. P. 56 is "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Fed. R. Civ. P. 56 sets the standard for summary judgment:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). It is also well established that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, (quoting Fed. R. Civ. P. 56) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.) "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote and internal citations omitted). In its review, the Court construes the record in the light most favorable to the

party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

III. Discussion

Generally, the insurer bears the burden to defend the insured if the disputed conduct or loss falls outside a policy's exclusionary clause. See generally Fretwell v. Protection Alarm Co., 1988 OK 84, 764 P.2d 149. "[T]here is no duty on the part of the insurer to defend 'when it is established by the insurer that the facts are such that there is no coverage under the policy for any resulting liability.'" State Farm Fire & Cas. Co. v. Williams, 355 N.W.2d 421, 424-25 (Minn. 1984) (citation omitted). "In order for an intentional act exclusion to result in a denial of coverage in Oklahoma, two elements must be shown: (1) the insured must have intended to commit the act and (2) the insured must intend to commit the injury or harm which resulted." Allstate Ins. Co. v. Thomas, 684 F.Supp. 1056, 1058 (W.D. Okla. 1988). "Oklahoma's treatment of child molestation convinces the court that Oklahoma would infer an intent to inflict harm to a child when an adult intentionally commits an act of sexual abuse." Id. Oklahoma courts have determined "that an allegation of child molestation satisfies these two elements as a matter of law." Id.

Plaintiff's policy, which was issued to Dan Phillips, contains the following language:

> Exclusions
> UNDER LIABILITY AND MEDICAL PAYMENTS TO OTHERS
> We do not cover:
> 3. **bodily injury** or **property damage** expected or intended by an insured.

(Pl.'s Mot., Dkt. No. 18, Ex. 1, p. 3.)

5

Plaintiff argues that the alleged conduct "was intentional and the injuries complained of were expected and intended." (Pl.'s Mot., Dkt. No. 18, p. 4.) The plain language of the policy does not discuss or state any coverage requirements relating to negligence. Defendant Martin argues that even though courts have "ruled that the intended harm to the child is inferred when dealing with sexual molestation. . . . this conclusion . . . does not necessarily mean that all harms the child may suffer are intended, and thus would be an issue for a finder of fact to determine." (Def. Martin Resp., Dkt. No. 24, p. 2.) This argument does not have merit with regard to the instant circumstances. The clear and unambiguous policy language does not include coverage for intentional actions. Defendant Martin argues "[i]t is the contention of the Defendant that there are possible damages that resulted from the [Defendant Phillips'] actions that are still covered under the policy even though the acts of the [Defendant Phillips] were intentional." (Def. Martin Resp., Dkt. No. 24, p. 3.) However, Defendant does not elucidate or define any of those actions that are still covered under the policy. Defendant does not allege any material issue of fact, or indeed any fact or policy language that would indicate the language of the policy at issue would cover negligent actions.

In this instance, Phillips did commit intentional acts of molestation and lewd conduct and from the applicable case law, this Court can infer as a matter of law that Phillips intended to cause the alleged harm to S.M. and A.M. The clear and unambiguous language of the insurance policy excludes intentional acts. Additionally, there is nothing in Plaintiff Shelter's insurance policy that purports, even within a broad reading and understanding of the insurance policy, to cover negligent acts.

## IV. Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is GRANTED. A judgment will enter accordingly.

IT IS SO ORDERED this 13th day of June, 2018.

*ROBIN J. CAUTHRON*
United States District Judge